**JACKSON et al. v. BREWSTER et al.***

No. 5285.

Court of Appeal of Louisiana. Second Circuit.

June 26, 1936.

Herold, Cousin & Herold, of Shreveport, for appellants.

John B. Files, of Shreveport, for appellees.

HAMITER, Judge.

Recognition as owners of an undivided two-fifths interest in certain real estate, and a partition of that property, are sought by the plaintiffs in this cause.

Mollie Jackson died intestate on June 5, 1931, owning and possessing lot 6, section 34, township 18 north, range 15 west, Caddo parish, La. She left, as her sole and only heirs at law, five children, all of age,

*Rehearing denied July 15, 1936.

viz.: John and Tyler Jackson, plaintiffs in the case at bar, and Rachal Jackson Antwine, Mack Jackson, and Lovella Jackson Lindsay.

The last three named children conveyed unto W. O. Brewster, under a general warranty deed, all of their interest in the estate of their mother, being an undivided three-fifths interest in and to the above described property, and thereafter said vendee conveyed it to his brother Curtis A. Brewster.

On July 28, 1931, attachment proceedings were instituted by W. O. Brewster in suit No. 57,308 on the docket of the First judicial district court of Caddo parish, entitled W. O. Brewster v. John Jackson et al., in the petition of which he alleged that Mollie Jackson, at the time of her death, was indebted to him in the sum of $250; that John and Tyler Jackson had unconditionally accepted the succession of their mother; and that those children owed him their proportionate amount of that debt. As such defendants were nonresidents of this state, curators ad hoc were appointed to represent them. No appearances were made, and judgment by default was rendered "in favor of W. O. Brewster and against John and Tyler Jackson, defendants, in rem, each for his virile portion, in the full and just sum of $100.00, or $50.00 each, with legal interest thereon from judicial demand until paid." The court further ordered the maintenance of the writ of attachment previously issued, and the seizure and sale of their undivided two-fifths interest in the above property. No appeal from this judgment has ever been perfected. A writ of fieri facias then issued commanding the sheriff to seize and sell such undivided interest, and to cause to be made the sum of $100, interest and costs, to satisfy the judgment. Advertisement was inserted and carried in the Legal News, a publication in the city of Shreveport, and the sale occurred on November 28, 1931. The property was adjudicated to W. O. Brewster.

Thereafter, suit was brought by Curtis A. Brewster, who had acquired by deed, as before stated, an undivided three-fifths interest in the property against the said John and Tyler Jackson and W. O. Brewster for the purpose of partitioning the real estate, said suit being No. 58,547 on the docket of that court, and entitled Curtis A. Brewster v. W. O. Brewster et al. The named nonresidents were brought into court through substituted service. In due course of time plaintiff therein obtained judgment by default decreeing a partition by licitation of the property, and ordering that three-fifths of the proceeds of the sale be paid to Curtis A. Brewster and the remaining two-fifths be retained by the sheriff, subject to the rights of the defendants therein and the further orders of that court. The sale was held on March 26, 1932, and the property was purchased by Curtis A. Brewster.

Later, it was discovered that in the petition for the partition, the property was erroneously described as being located in section 37, instead of in section 34. It was properly described, however, in all other proceedings in that suit, including the judgment, the commission to sell, the advertisement, and the sheriff's proces verbal. To cure that defect of description, Curtis A. Brewster then instituted suit No. 61,643 against the said John and Tyler Jackson and W. O. Brewster, said nonresidents being again represented by curators. To the petition in that suit, the appointed curators filed exceptions of no cause or right of action and then answered. The answer contained a general denial of the allegations of the petition, and a specific averment that the proper remedy of petitioner was a new suit for partition. After trial, judgment was rendered in favor of plaintiff therein adjudging the misdescription in the petition in suit No. 58,547, or the partition proceedings, to be a typographical error, correcting the petition to properly describe the property, recognizing the judgment therein as valid, decreeing Curtis A. Brewster to be the absolute owner of the property, and quieting him in his possession. This judgment was signed on May 27, 1933, and no appeal was prosecuted therefrom.

On May 18, 1933, the said John and Tyler Jackson, in suit No. 61,825, applied to the First judicial district court, Caddo parish, for the appointment of an administrator for their mother's succession, and prayed for the taking of an inventory. The inventory was duly prepared, approved, and homologated. Pending that application, and on their petition, said applicants were, by an ex parte judgment of court, recognized as heirs of Mollie Jackson and sent into possession of an undivided two-fifths of the property owned by her at her death, and particularly of the above described real estate.

In this cause, which was filed on September 14, 1934, against W. O. Brewster and

Curtis A. Brewster, the said John and Tyler Jackson seek to set aside the judgment and sheriff's sale had under the attachment suit, and all subsequent proceedings growing out of or had by reason thereof; to have themselves recognized as the owners of an undivided two-fifths interest in said property; and to obtain a partition of the tract of land in question.

Defendants first pleaded that the petition stated no cause or right of action. They then answered, denying plaintiffs' alleged ownership, averring that Curtis A. Brewster is the owner of all of the property, and specially urging the prescription of two years under article 3543 of the Civil Code, as amended by Act No. 231 of 1932, and that of the same period under article 614 of the Code of Practice.

There was judgment in the trial court in plaintiffs' favor, as prayed for, and ordering the partition to be made in kind. Defendants have appealed devolutively.

■ The exception of no cause or right of action has not been urged in this court, and we shall consider it as having been abandoned.

Appellees attack the proceedings in the attachment suit on three grounds:

(1) That no acceptance of their mother's succession had been made by them.

(2) That the writ of fieri facias was for the sum of $100 against John and Tyler Jackson, instead of reading $50 against each of them.

(3) That the advertisement for the sale was made in the Legal News, instead of a regularly constituted newspaper.

They aver the nullity of the subsequent proceedings for the following reasons:

(1) That they are based on a null judgment (that of the attachment suit), and appellees had not then accepted the succession of their mother.

(2) That only substituted service was had on the nonresident defendants therein.

(3) That the court was without authority to amend allegations of the petition (that of the partition suit in which the typographical error regarding description was made), so as to conform to a judgment previously rendered by default.

We shall attempt to discuss the above contentions in the order named.

■ When a simple and unconditional acceptance of a succession is made by an heir of age, whether such be express or tacit, he becomes personally liable for the debts of the succession to the extent of his virile share. Civ.Code, art. 1013. The simple acceptance may be either express or tacit. It is express when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding. It is tacit when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir. Civ.Code, art. 988. The attachment proceedings, containing the judgment sought to be annulled, were predicated upon the theory that John and Tyler Jackson had unconditionally accepted their mother's estate. The petition therein contained an allegation to that effect, and the judgment, based on the petition, was rendered and signed. Those parties, who are plaintiffs in this cause, earnestly contend and insist, however, that no such acceptance had taken place at that time. They allege in article 5, paragraph "a" of their petition in this suit:

"That on said date your petitioners had not accepted the succession of their mother, Mollie Jackson, deceased, and were not responsible for any claim or debts due by the said Mollie Jackson to the said W. O. Brewster."

In the answer, a specific denial of this allegation is made, thus creating the issue of whether or not an acceptance of the succession had occurred. Although it is to be seen that the above-quoted allegation is negative in character, nevertheless the fact alleged on is material to plaintiffs' cause of action and the burden of proving it is with them. The general rule seems to be that the party whose contention requires proof of a negative fact has the burden of evidence to prove that fact. 22 Corpus Juris p. 80. An exception to this rule is where the matter is peculiarly within the knowledge of the adverse parties. 22 Corpus Juris p. 81. It is obvious that this case does not fall within the exception to the rule, for certainly these plaintiffs possessed more knowledge about the matter than did the opposing parties. As the record does not contain a particle of evidence tending to establish that the plaintiffs had not accepted the succession, we must hold that the attack, with reference to this ground, cannot prevail. The presumption is that the attachment proceedings, including the judgment therein, were entirely regular. Howcott v. Smart, 125 La. 50, 51 So. 64;

Vinton Oil & Sulphur Co. v. Gray, 135 La. 1049, 66 So. 357.

■ The second ground of attack, i. e., that the writ of fieri facias was for the sum of $100 against both these plaintiffs, instead of for $50 against each of them, is in our view, likewise without merit. The judgment was in one instrument and against both parties for $100, or $50 each. It was not of a solidary nature. The liability therein imposed was in rem and not personal. The sale of the undivided two-fifths interest of both plaintiffs in the property was specifically ordered for the purpose of satisfying the judgment. The adjudication was held under the writ of fieri facias as directed in the judgment. No effort was made by either of the parties to obtain a separate sale of his respective interest, and it was not shown that either was harmed by virtue of the judicial sale as held. The writ and sale, we think, were regular in every respect.

Plaintiffs rely on the case of Mullins v. Hanneman, 123 La. 643, 644, 49 So. 271, in aid of their attack on the sale. There a mortgage creditor had seized, and was advertising for sale, not only the property belonging to the debtor, but also a tract owned by another. The court enjoined the sale, holding that the mode of proceeding was grossly irregular, and the irregularity was of a nature to cause injury by deterring competition and bringing about insoluble complications. It is to be seen that the Mullins Case is decidedly different from the case at bar. If the court, in this case, had ordered the interest of only one party sold and both interests had been seized, advertised, and adjudicated, some analogy between the two cases might be apparent. But such is not the case. The judgment ordered the sale of both interests for a given amount, and the subsequent proceedings were in compliance therewith.

The case of Dugat v. Babin et al., 8 Mart. (N.S.) 391, cited by plaintiffs, is likewise not applicable. Therein it was held that separate judgments do not authorize a joint execution. There are no separate judgments in the case at bar.

■ Appellees next urge that the judicial sale held under the attachment proceedings was null because of the advertisement having been made in the Legal News. In support of this, they refer to the case of McDonald et al. v. Shreveport Mutual Building Ass'n et al., reported in 178 La. 645, 152 So. 318, wherein it was held that the Legal News was not a "newspaper" within the meaning of the statute requiring advertisement of judicial and legal proceedings and judicial sales to be published in a newspaper (Act No. 49 of 1877, § 16; Act No. 33 of 1916). Conceding arguendo that the advertisement was defective, we are of the opinion that said irregularity was such an informality as was cured by the prescription of two years under article 3543 of the Civil Code, as amended by Act No. 231 of 1932. That article, as amended, reads as follows:

"Any and all informalities of legal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, licensed auctioneer, or other persons, authorized by an order of the courts of this State, to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were part owners at the time of making it, and in the event of such part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication thereof."

In the case of Davis v. Gaines, 104 U.S. 386, 402, 26 L.Ed. 757, the Supreme Court of the United States, in considering a case which arose in this state, said:

"That want of advertisements of the sale is such an irregularity as falls within the prescription was held in the cases of Woods v. Lee, 21 La.Ann. 505, and Pasiana v. Powell, 21 La.Ann. 584. And it would seem that when property was sold at public sale, and as in this case brought its full value, the want of previous advertisement was a very immaterial matter."

Plaintiffs' contention that the proceedings had subsequent to the attachment suit are null because of their failure to accept the succession cannot be sustained for the same reasons hereinabove given in connection with our discussion of the attachment judgment.

■ The conducting of the proceedings in question against the nonresidents through curators ad hoc, or by substituted service, was authorized by the laws of this state. Civil Code, art. 56; Code Prac. art. 116. The Supreme Court, in the case of Tell v. Senac et al., 122 La. 1040, 48 So. 448, stated:

"An absentee who is a joint owner of real property may be made a party in partition of the property by substituted service."

That case was cited with approval in Lotz v. Iberville Bank & Trust Co., 176 La. 579, 146 So. 155.

Plaintiffs finally attack the proceedings in suit No. 61,643, wherein the petition for a partition, containing a misdescription of property, was corrected. Those proceedings were carried on contradictorily with all parties involved in a partition suit, the nonresidents being represented by duly appointed curators ad hoc. The record reveals that these appointees actively and energetically represented these plaintiffs through the filing of exceptions, answer, and in the trial of the case, and that the issues were properly presented to and considered by the court. Full authority to entertain and pass upon those issues was vested in that tribunal, and the proceedings, including the judgment therein, were entirely regular.

For the foregoing reasons, the judgment in this case is reversed, and plaintiffs' suit is dismissed. Plaintiffs shall pay costs of both courts.