STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 1386

CARROLL EDWARD CLARK, SR., AND
RUBY JANETTE PHILLIPS CLARK

VERSUS

DAVID FAZEKAS AND DEBORAH FAZEKAS

*Judgment Rendered:* **MAY 1 1 2020**

********

Appealed from the 23rd Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Suit No. 125,538

The Honorable Jason M. Verdigets, Judge Presiding

********

| | |
|---|---|
| Jay M. Simon<br>Baton Rouge, Louisiana | Counsel for Plaintiffs/Appellants<br>Carroll Edward Clark, Sr. and<br>Ruby Janette Phillips Clark |
| Larry S. Bankston<br>Jenna H. Linn<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>David Fazekas and Deborah<br>Fazekas |

********

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**LANIER, J.**

Plaintiffs, Carroll Edward Clark, Sr. and Ruby Janette Phillips Clark ("the Clarks"), challenge the trial court's July 19, 2019 judgment rendered in favor of defendants, David and Deborah Fazekas ("the Fazekas"), regarding a certain servitude of passage as it relates to the parties. For the reasons that follow, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

The history of the property in question in this case is not in dispute. In 1995, the Clarks originally purchased 2.52 acres of land located on Bluff Road in Geismar, Louisiana, known as Lot 5-A-1. They built a home on the property, and Mr. Clark constructed a private driveway, C. Clark Lane, that provided the Clark's access to Bluff Road. Soon thereafter, the Clarks' son sold them a 1.0-acre tract of land that bordered their property to the south of C. Clark Lane, and the Clarks joined the properties together to be known as Lot 5-A-1.

In November 2005, the Clarks performed a family partition of Lot 5-A-1, dividing the land into two tracts, the 2.52 acres north of C. Clark Lane became Lot 5-A-1-A, and the 1.0-acre tract south of C. Clark Lane became Lot 5-A-1-B. According to the record, C. Clark Lane was a 20-foot wide private servitude of passage that extended 50 feet past the corner of Lot 5-A-1-B. Thereafter, also in November 2005, the Clarks sold Lot 5-A-1-A to Terry and Jeanine Loup ("the Loups") and began building a new home on Lot 5-A-1-B. The Loups subsequently sold Lot 5-A-1-A to the Fazekas in June 2008.

In 2011, the Clarks obtained permits from the parish to place a mobile home on the rear of Lot 5-A-1-B to allow their daughter to live on the property with them. Approximately one year after the placement of the mobile home on the back portion of Lot 5-A-1-B, David Fazekas began expressing some concerns about the mobile home and who would live there if the Clarks' daughter ever moved. David

2

then approached Mr. Clark with a map showing a "private driveway" that ran along the side of Lot 5-A-1-A, beginning just past where the 50-foot extension of C. Clark Lane ended and running to the back of Lot 5-A-1-A. Mr. Fazekas asked Mr. Clark to sign an agreement stating that the "private driveway" was located on Lot 5-A-1-A and that a servitude was being granted to the family members of Lot 5-A-1-B to access the western portion of Lot 5-A-1-B. This agreement was to end either at the earlier of the termination date or until ownership of one of the lots changed. The agreement was signed twice by Mr. Clark, once on September 22, 2012, which bore the expiration date of December 30, 2015, and again on January 6, 2016, which bore an expiration date of December 30, 2020.

On May 14, 2019, the Clarks filed a petition for declaratory judgment against the Fazekas, asserting that they had "continually and consistently accessed the rear of their property at Lot 5-A-1-B via the roadway that exists on Lot 5-A-1-A" and that this unfettered access to the rear of their property had included access to the mobile home. Seeking to "solidify and maintain their right to continue to access the rear of their property," the Clarks asked for judgment declaring the continuing right of the Clarks to access the rear of their property. The matter proceeded to hearing before the trial court.

After considering the evidence and argument of the parties, the trial court rendered judgment on July 19, 2019, in favor of the Fazekas as follows:

> **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that, considering the Petition for Declaratory Judgment filed by the Plaintiffs, Carrol[l] Clark Sr. and Ruby Clark, against the Defendants, David Fazekas and Deborah Fazekas, judgment be entered in favor of the Defendants, David and Deborah Fazekas, as the servitude of passage to Lot 5-A-1-B extends only 50 feet on to Lot 5-A-1-B, but no farther.

3

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the agreement between Mr. and Mrs. Fazekas and Mr. Clark stating that the servitude of passage extending past the 50-foot servitude of passage will terminate at the earlier of December 30, 2020 or when either Lot 5-A-1-A or Lot 5-A-1-B is owned by someone other than the parties is enforceable.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that nothing in this judgment shall be construed to deny Lot 5-A-1-B access to Bluff Road via the servitude of passage established on C[.] Clark Lane.

It is from this judgment that the Clarks have appealed.

## SUBJECT MATTER JURISDICTION

As an appellate court, we have the duty to examine our subject matter jurisdiction and to determine *sua sponte* whether such subject matter jurisdiction exists, even when the issue is not raised by the litigants. **Marrero v. I. Manheim Auctions, Inc.**, 2019-0365 (La. App. 1 Cir. 11/19/19), ___ So.3d ___, ___, 2019 WL 6167832, *1; **Advanced Leveling & Concrete Solutions v. Lathan Company, Inc.**, 2017-1250 (La. App. 1 Cir. 12/20/18), 268 So. 3d 1044, 1046 (en banc). This court's appellate jurisdiction only extends to "final judgments." **Rose v. Twin River Development, LLC**, 2017-0319 (La. App. 1 Cir. 11/1/17), 233 So. 3d 679, 683; see also La. Code Civ. P. art. 2083(A).

A valid judgment must be precise, definite, and certain. **Laird v. St. Tammany Parish Safe Harbor**, 2002-0045 (La. App. 1 Cir. 12/20/02), 836 So. 2d. 364, 365. Moreover, a final appealable judgment must contain decretal language and must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. **Matter of Succession of Weber**, 2018-1337 (La. App. 1 Cir. 4/29/19), 276 So.3d 1021, 1026-1027. These determinations should be evident from the language of the judgment without reference to other documents in the record. **Advanced Leveling & Concrete Solutions**, 268 So. 3d at 1046.

4

Moreover, La. Code Civ. P. arts. 1919 and 2089 require that all final judgments affecting immovable property must describe such property with particularity.[1] Because a predial servitude is an incorporeal immovable, the specificity requirements of Articles 1919 and 2089 apply to the July 19, 2019 judgment's description of the servitude of passage on Lot 5-A-1-B. See La. Civ. Code art. 649; **Carmena v. O'Connell**, 2018-0661 (La. App. 1 Cir. 2/6/19), 2019 WL 474730, *2.[2] The purpose of these articles is "to insure that the public in general, and title examiners, successful litigants, officials charged with executions of judgments and surveyors in particular, can accurately deal with the immovable property." **Hurst v. Ricard**, 558 So. 2d 1269, 1272 (La. App. 1 Cir.), writ denied, 559 So. 2d 1378 (La. 1990). The judgment must include the legal description of a property, with reference to landmarks such as roads, benchmarks, or other monuments which can be located, or a survey commencing at some established point. **Hooper v. Hero Lands Company**, 2015-0929 (La. App. 4 Cir. 3/30/16), 216 So. 3d 965, 980, writ denied, 2016-0971 (La. 9/16/16), 206 So. 3d 205.

The July 19, 2019 judgment states that "the servitude of passage to Lot 5-A-1-B extends only 50 feet on to Lot 5-A-1-B, but no farther." There is no other description of the immovable property other than "Lot 5-A-1-B." Without reference to an extrinsic source, such as pleadings or exhibits in the record, one would be unable to determine, with specificity, where the servitude of passage referred to in the July 19, 2019 judgment is actually located. Therefore, in the

---

[1] Article 1919 provides, in pertinent part, that "[a]ll final judgments which affect title to immovable property shall describe the immovable property affected with particularity." Article 2089 provides that "[a]ll judgments and decrees which affect title to immovable property shall describe with particularity the immovable property affected."

[2] We recognize that where the record contains an accurate description of the subject property and servitude in question, appellate courts have addressed the merits of the case and amended the judgment to include the property description. **Carmena**, 2019 WL 474730 at *2-3. However, the servitude in question is not accurately and fully described in any property description contained in relevant documents in the record before us. We note that while the act of donation between the Clarks and their daughter includes a description of the servitude in question, said description dos not clearly reflect the width and length of the servitude.

5

absence of appropriate decretal language, the judgment is defective and cannot be considered a final judgment for purposes of appeal. Thus, this court lacks appellate jurisdiction to review this matter and we must dismiss this appeal. **Advanced Leveling & Concrete Solutions**, 268 So. 3d at 1046-1047.[3]

## CONCLUSION

For the above and foregoing reasons, we dismiss the appeal of the July 19, 2019 judgment. We decline to assess costs pending the rendition of a final judgment.

**APPEAL DISMISSED.**

---

[3] We recognize that this court has discretion to convert an appeal of a non-appealable judgment to an application for supervisory writs. See **Stelluto v. Stelluto**, 2005-0074 (La. 6/29/05), 914 So.2d 34, 39. Nonetheless, we note that an appellate court will generally refrain from the exercise of its supervisory jurisdiction when an adequate remedy exists by appeal, particularly when an adequate remedy by appeal will exist upon the entry of the requisite precise, definite, and certain decretal language necessary for appellate review. See **Simon v. Ferguson**, 2018-0826 (La. App. 1 Cir. 2/28/19), 274 So. 3d 10, 14. Accordingly, we decline to exercise our discretion to convert this appeal of a judgment that is not final for lack of decretal language to an application for supervisory writs. See **Boyd Louisiana Racing, Inc. v. Bridges**, 2015-0393 (La. App. 1 Cir. 12/23/15) 2015 WL 9435285, *4 (unpublished).